UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| In the Matter of | ) |  |
| --- | --- | --- |
| ARNETTA LYNN BROWN | ) |  |
| Debtor. | ) |  |
| STATE OF INDIANA ex rel. INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT | ) | Case No. 3:18-CV-427 JD |
| Plaintiff, | ) | Bankr. Case No. 16-32385 |
|  | ) | Adv. Proc. No. 17-3016 |
| v. | ) |  |
| ARNETTA LYNN BROWN, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Arnetta Brown collected unemployment benefits while falsely certifying that she was not working. After discovering her earnings, the State of Indiana required her to repay those benefits. It also imposed a penalty for her false statements. Ms. Brown then filed bankruptcy, prompting the State to seek a declaration that those debts are not dischargeable. The bankruptcy court disagreed and held that both debts were discharged. The State appeals in part, arguing that the penalty is non-dischargeable under § 523(a)(7). (It does not appeal as to the overpayment of benefits.) Section 523(a)(7) applies to penalties that are payable to and for the benefit of the government and that are not compensatory. The Court concludes that the penalty here meets those elements, so the Court reverses.

### I. FACTUAL BACKGROUND

Arnetta Brown applied for unemployment benefits from the Indiana Department of Workforce Development beginning in April 2010. To apply for benefits, Ms. Brown had to

affirm that she understood that she "must report all earnings from employment or self-employment regardless of source." Ms. Brown thereafter had to submit a voucher for each week that she sought benefits. To submit each voucher, Ms. Brown had to certify that she "reported any and all work, earnings, and self-employment activity" for that week and that "all answers and information given in this application for benefits are true and accurate." The vouchers further required her to certify that she was aware she could be penalized if she knowingly failed to disclose information or gave false information.

Ms. Brown submitted vouchers each week from April 17, 2010 through June 16, 2012. Each voucher asked Ms. Brown whether she worked that week. Until April 2012, Ms. Brown answered "no" every week. For the next 7 weeks, Ms. Brown reported that she had worked, and she reported her gross earnings for the week. Every one of those vouchers contained false information, though. In truth, Ms. Brown had worked part-time for Bob Evans throughout that entire period, and she had earnings in every week. And her actual earnings in the last 7 weeks were greater than the earnings she reported in her vouchers for those weeks.

The Indiana Department of Workforce Development later learned of Ms. Brown's earnings during that period. It asked her to come for an interview, at which she signed a sworn statement. In that statement, Ms. Brown wrote that when she first applied for benefits, an employee told her that her weekly earnings of $35.00 were not enough to report. Thus, she never reported any of her earnings in the subsequent weeks either.

The department initiated an administrative proceeding to recover the overpayments. An investigator concluded that Ms. Brown received benefits to which she was not entitled, which she would have to pay back. The investigator further concluded that Ms. Brown knowingly failed to disclose or falsified material facts, making her liable for statutory penalties as well. Ms.

Brown appealed that decision. After holding a hearing, an administrative law judge affirmed the investigator's findings. In particular, the judge concluded that Ms. Brown had received benefits to which she was not entitled, and that she had to return those overpayments. The judge also concluded that Ms. Brown "knowingly failed to disclose wages" during each week, justifying civil penalties as well. In all, the judge found Ms. Brown liable for overpayments in the amount of $30,572 and civil penalties in the amount of $17,765. On an appeal by Ms. Brown, the Unemployment Insurance Review Board affirmed that decision in March 2015. Ms. Brown had the right to appeal that decision to the Indiana Court of Appeals, but she did not do so.

In November 2016, Ms. Brown filed a petition for bankruptcy under Chapter 7. The State of Indiana then filed an adversary proceeding seeking a declaration that Ms. Brown's debts to the Department of Workforce Development were non-dischargeable. Ms. Brown did not respond to the complaint or take any other action in the adversary proceeding, so the State moved for entry of default, which the clerk entered. The State then moved for default judgment. Again, Ms. Brown did not respond. The bankruptcy court not only denied the motion for default judgment, though, it entered judgment against the State. The bankruptcy court noted that the record included Ms. Brown's statement that she never reported her work or her earnings because she was told when she first applied that her earnings weren't enough to report. The court accepted that statement as true and found that it excused the false statements in her vouchers.

Based on those findings, the bankruptcy court held that none of the exceptions to discharge applied. It found that Ms. Brown did not have an intent to deceive, so § 523(a)(2)(A) (which applies to property obtained by fraud) did not apply and the debt for the overpayment of benefits was dischargeable. It also found that Ms. Brown's conduct was not blameworthy, so § 523(a)(7) (which applies to punitive sanctions) did not apply either, making the penalty portion

3

of her debt dischargeable too. The State filed a motion for reconsideration 14 days later, which the bankruptcy court denied, so the State filed a notice of appeal to a district court. Though she did not participate in the bankruptcy court, Ms. Brown has now appeared and filed a response in defense of the judgment.

## II. STANDARD OF REVIEW

In reviewing the bankruptcy court's judgment, "[q]uestions of law are considered *de novo,* and factual findings receive clear-error scrutiny." *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014); *In re Trentadue*, 837 F.3d 743, 748 (7th Cir. 2016). Brown argues that review is only for abuse of discretion because the State filed a post-judgment motion for reconsideration. Review of an order on a Rule 59(e) or Rule 60(b) motion would be for abuse of discretion. *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008). However, when a party timely files certain post-judgment motions in the bankruptcy court, the time to appeal the underlying judgment runs from the date of the order resolving the post-judgment motion. Fed. R. Bankr. P. 8002(b)(1). A notice of appeal after the entry of such an order "brings up the underlying judgment for review." *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003); *Borrero v. City of Chi.*, 456 F.3d 698, 700 (7th Cir. 2006) (holding that when a party appeals from the denial of a timely post-judgment motion for reconsideration, courts treat an appeal from the denial of the post-judgment motion as an appeal from the judgment). Here, the State filed a post-judgment motion 14 days after the entry of judgment, and it timely filed its notice of appeal 14 days after the court denied that motion. Fed. R. Bankr. P. 8002(b)(1)(B), (D). The State's appeal thus brings up the underlying judgment for review, and as just noted, that judgment is reviewed *de novo* for questions of law and for clear error for factual findings. *Kovacs*, 739 F.3d at 1023.

## III.  DISCUSSION

The State appeals the bankruptcy court's judgment only as to the penalty. A discharge under Chapter 7 discharges any debt unless the debt meets one of the statutory exceptions to dischargeability. 11 U.S.C. § 727(b). "[E]xceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *Trentadue*, 837 F.3d at 749. The State argues that the penalty is non-dischargeable under § 523(a)(7). That provision says that a debt is not discharged "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss[.]" 11 U.S.C. § 523(a)(7). This exception thus has three elements: (1) the debt must be a fine, penalty, or forfeiture; (2) it must be "payable to and for the benefit of a governmental unit"; and (3) it must not be compensation for a pecuniary loss. *Id.*; *In re Towers*, 162 F.3d 952, 954–55 (7th Cir. 1998).

There is no dispute that the debt meets the third element—it is not compensatory. The bankruptcy court offered three reasons for concluding that the debt in question is dischargeable, though. First, it held that a debt for a penalty is automatically discharged if the underlying debt is also discharged. Second, it held that the debt here is not a penalty because Ms. Brown did not knowingly fail to disclose her earnings. And third, it held that the debt is not payable "for the benefit of" the government. The Court addresses each issue in turn.

### A.   Status of the Underlying Debt

First, the bankruptcy court held that where an underlying debt is discharged, a penalty imposed with that debt is necessarily discharged as well. Because the court found that Ms. Brown's overpayment debt was discharged, it held that the penalty was discharged too. The State does not appeal the discharge of the overpayment debt, so the question is whether the bankruptcy court's premise was sound—that the dischargeability of a penalty depends on the status of an

5

underlying debt. The only authority the bankruptcy court cited for that premise was its own prior opinions, none of which provide an explanation or cite authority in support. *E.g.*, *Ind. Dep't of Workforce Dev. v. Garwick*, No. 12-43761, 2013 Bankr. LEXIS 5575, at *13 (Bankr. N.D. Ind. Nov. 20, 2013) ("[W]ithout proof that the debt itself is nondischargeable, no fine or penalty based upon that debt can be held nondischargeable under § 523(a)(7)."). On appeal, Ms. Brown likewise cites only to those opinions, but offers no argument for why that premise is correct.

Nothing in the statute says that a penalty is automatically discharged if a related underlying debt is discharged. Section 523(a)(7) identifies three elements that, when met, make a debt non-dischargeable, and those elements do not refer to the status of an underlying debt. In addition, § 523(a)(7) often applies to penalties imposed on criminal convictions, where there is no underlying debt at all. *E.g.*, *Kelly v. Robinson*, 479 U.S. 36 (1986). Further, § 523(a)(7) says that a debt is non-dischargeable "to the extent such debt is for" a qualifying penalty. 11 U.S.C. § 523(a)(7). That wording contemplates that other aspects of the debt may be dischargeable, but that a debt that meets the elements of this exception will not be discharged, regardless of the status of other portions of the debt. *Loy*, 584 B.R. at 304 n.1 (holding that "§ 523(a)(2) and § 523(a)(7) also represent different causes of action which could have different outcomes because of their different elements"). And finally, other courts have concluded that penalties can satisfy § 523(a)(7) even when an underlying debt is dischargeable. For example, in *Towers*, the Seventh Circuit held that a penalty "unquestionably satisfied § 523(a)(7)" and was non-dischargeable, even though it held that another part of the debt was discharged. 162 F.3d at 955.[1]

---

[1] See also *Indiana v. Holmes*, No. 17-50017, 2018 Bankr. LEXIS 2969, at *16 (Bankr. S.D. Ind. Sept. 28, 2018) (holding that the civil penalties were not dischargeable even though the overpayment debt was discharged); *Indiana v. Owens*, No. 17-50002, 2018 Bankr. LEXIS 813, at *14 (Bankr. S.D. Ind. Mar. 20, 2018) (same); *In re Burge*, No. 14-5590, 2015 WL 10013011, at *5 (Bankr. S.D. Ind. Dec. 16, 2015) (same).

The Court therefore holds that a debt that satisfies § 523(a)(7) is non-dischargeable even if a related underlying debt is discharged. The discharge of Ms. Brown's underlying debt for the overpayment thus does not mean that the penalty is discharged as well.

**B.     Penalty, Fine, or Forfeiture**

The bankruptcy court also found that Ms. Brown's debt did not qualify as a penalty because her conduct was innocent and undeserving of punitive measures. Specifically, it credited her statement that she failed to disclose her earnings because she was initially told they were too low to report. The court held that she had not knowingly failed to disclose her earnings, so it would be inappropriate to impose a penalty against her. This was the sole basis for the court's initial order, and the court reiterated that conclusion in denying the motion for reconsideration. Ms. Brown does not attempt to defend the judgment on this ground, though, and the Court agrees with the State that this reasoning is misplaced.[2]

Determining whether a debt meets the elements of § 523(a)(7) does not require relitigating whether the debt should have been imposed in the first place. *Loy*, 584 B.R. at 303–04 (holding that the elements of § 523(a)(7) "focus only upon the characteristics of the debt

---

[2] This finding was procedurally irregular as well. When a party is in default, as was Ms. Brown, a complaint's factual allegations on liability are typically deemed true. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). The bankruptcy court observed, though, that the record also contained Ms. Brown's explanation for why she failed to report her earnings. The court then accepted that explanation as true and found that it excused her false statements. The court thus entered judgment against the State, without giving the State an opportunity to prove the contrary. The court's conclusion that Ms. Brown's explanation foreclosed the State's ability to prevail is unfounded—particularly since the agency expressly concluded that Ms. Brown knowingly failed to disclose her earnings. For one, her explanation could have been false. And even if true, it might not excuse her conduct. She claims to have been told that her earnings of $35 a week were not enough to report, but none of the weeks in question involved earnings as little as $35. And even when she began to report earnings after two years, she substantially underreported those earnings. Also, the earnings she reported for those final weeks were less than $30, undermining the assertion that she believed those amounts did not need to be reported. The court thus acted prematurely in adjudicating these facts against the State on the State's own motion for default judgment.

7

itself," and do "not involve, ask the bankruptcy court to pass upon, or require the creditor to prove the underlying misconduct that led to the imposition of the penalty"). The bankruptcy court concluded that Ms. Brown had not knowingly failed to report her earnings, so it would be unfair to penalize her. But the fact remains that the State did impose civil penalties on Ms. Brown. The question in the bankruptcy proceeding is whether that debt meets the elements of § 523(a)(7). *Loy*, 584 B.R. at 303–04. Unlike other exceptions to discharge (like § 523(a)(2)), § 523(a)(7)'s elements do not require the bankruptcy court to make findings as to the debtor's intent. *Owens*, 2018 Bankr. LEXIS 813, at *18 ("[T]here is no intent element in determining whether a penalty is excepted from discharge pursuant to § 523(a)(7).").

A penalty imposed for knowingly failing to disclose earnings qualifies as a "penalty" under § 523(a)(7). Indiana law authorizes "civil penalties" if a person "knowingly fails to disclose or falsifies any fact" that would affect their unemployment benefits. Ind. Code § 22-4-13-1.1(b). The penalties are imposed in addition to the amount of benefits the person has to repay, so they are not compensatory. The amount of the penalties also increases for each instance: 25 percent for the first overpayment, 50 percent for the second, and 100 percent for the third and beyond. The escalating amounts show that these penalties are designed to deter and punish this conduct. *Ind. ex rel. Ind. Dep't of Workforce Dev. v. Ross*, No. 16-3037, 2017 Bankr. LEXIS 3715, at *7 (Bankr. N.D. Ind. Aug. 28, 2017) ("The progressive nature of the assessments for overpayments punishes individuals who attempt to take improper advantage of the Indiana unemployment compensation system."). These penalties are thus penal in nature, so they qualify as "penalties" for purpose of § 523(a)(7). And because the State imposed such a penalty on Ms. Brown, that debt meets this element.

C.      **For the Benefit of the Government**

The final question is whether the penalty is "payable to and for the benefit of" a governmental unit. The penalty here is "payable to" the government, but the parties dispute whether that payment is "for the benefit of" the government. As the State notes, bankruptcy courts routinely hold that these civil penalties satisfy § 523(a)(7) and are not dischargeable.[3] Breaking with that line of authority, the bankruptcy court here found that the penalties are not payable for the benefit of the government and thus cannot meet § 523(a)(7). It grounded that conclusion on state statutes governing where the penalties are deposited and how those funds are used. By state law, 15 percent of the civil penalties is deposited into the "unemployment insurance benefit fund." Ind. Code § 22-4-13-1.1(d)(1). That fund is controlled by the Department of Workforce Development, and money in that fund may be used "only for the payment of unemployment compensation benefits." Ind. Code § 22-4-26-1. The other 85 percent is deposited into the "special employment and training services fund," *id.* § 22-4-13-1.1(d)(2), another fund controlled by the department, from which it can pay a variety of expenses.

The bankruptcy court held that the penalties are not payable "for the benefit of" the government because these funds are used to pay unemployment benefits. The court concluded that the recipients of unemployment benefits are the true beneficiaries of these payments, not the government, which it viewed as a mere intermediary for the payment of these penalties. In support of that conclusion, the court relied on *In re Hansen*, 576 B.R. 845 (Bankr. E.D. Wis. 2017), which held that penalties related to worker's compensation benefits under Wisconsin law

---

[3] See, e.g., *Indiana v. Holmes*, No. 17-50017, 2018 Bankr. LEXIS 2969 (Bankr. S.D. Ind. Sept. 28, 2018); *Burkhardt v. Burkhardt*, No. 17-4004, 2018 Bankr. LEXIS 3004 (Bankr. N.D. Ind. May 23, 2018); *Loy*, 584 B.R. at 304; *Ind. ex rel. Ind. Dep't of Workforce Dev. v. Williams*, No. 16-3056, 2017 Bankr. LEXIS 3714 (Bankr. N.D. Ind. Sept. 13, 2017); *Ross*, 2017 Bankr. LEXIS 3715, among many others.

are not payable for the benefit of the government. The *Hansen* court noted that state law required the penalties to be deposited into a fund that could be spent only to benefit injured employees. *Id.* at 852. Because the funds could not be used to pay operational expenses, the court held that the funds were payable for the benefit not of the government, but of the private parties. *Id.* at 853.

There is no reason to conclude that funds are only payable for the benefit of a governmental unit if they are spent on administrative or operational expenses, though. The accounts into which the payments here are deposited are controlled by the government and are used to fund the government's activities. Indiana law requires the Department of Workforce Development to administer the unemployment insurance program, which includes paying unemployment benefits. Ind. Code §§ 22-4-18-1, -4. The department needs money to pay those benefits, just as it needs money to pay the salaries of staff who administer the program and to pay its other overhead expenses. The funds into which the penalties are deposited are used for those purposes. The penalties thus confer a financial benefit on the government by giving the department money to finance its activities. *In re Holder*, 376 B.R. 802, 810 (S.D. Tex. 2007) (holding that payments were payable "for the benefit of" the government even though state law required the payments to be deposited into specific funds, as those funds were used to support the government's activities, which included making payments to third parties).

The Seventh Circuit analyzed this element in *Towers*, 162 F.3d 952, where it considered whether a restitution obligation payable to the state was also "for the benefit of" the state. There, the debtor defrauded his customers, for which the state had imposed penalties that included restitution. *Towers*, 162 F.3d at 953. The restitution order listed the customers and the amount due to each. *Id.* Though the restitution was payable to the state, state law required the state to disburse the funds to the victims of the fraud. *Id.* at 955–56. The court explained that "the

'benefit' in question is the benefit of the money that is 'payable to' the governmental unit." *Id.* at 956. Since the government derived no "*financial* benefit" from the restitution payments—it was only an intermediary for the restitution payments—the court held that the payments were not "for the benefit of" a governmental unit. *Id.* at 956.

The State is not a mere intermediary in that same sense here, though. In *Towers*, the same order that required restitution to be paid to the state also triggered the state's obligation to disburse those payments to identified third parties; the state acquired no interest in those payments, nor did it have an obligation to compensate the victims absent the restitution order. 162 F.3d at 955–56. In contrast, the Department of Workforce Development has a pre-existing statutory obligation to administer the unemployment benefits program and to make benefits payments to eligible claimants. Though claimants benefit from receiving those payments, no claimants' benefits depend on whether the department assesses or collects these civil penalties; they receive the same benefits in the same amount regardless. Payments of the civil penalties thus confer a financial benefit on the government by helping it meet those existing obligations. That the government spends them for those purposes does not mean the payments do not benefit the government. *See Towers*, 162 F.3d at 955 ("If an agency collects money and deposits it into the state's . . . treasury, the fact that the government has a policy of compensating victims of crimes and civil wrongs does not make the collection less 'for the benefit' of the government; so, too, tax collections are for the public benefit even when the government spends the money as fast as it comes in."); *Holder*, 376 B.R. at 810 ("Whether deposited in the general revenue fund or the Texas Mobility Fund, the surcharges are being paid to and benefitting the state.").[4]

---

[4] And even if it mattered whether the payments are spent on administrative expenses, most of the civil penalties here can be spent in that manner. Ind. Code § 22-4-25-1.

The Court therefore concludes that the civil penalties are payable to and for the benefit of the government. They are collected by the government and deposited into funds that are controlled by the government and from which the government finances its activities. That those activities include paying benefits to third parties and paying other expenses for the public good does not make the payments any less for the benefit of the government. The civil penalties thus satisfy all three elements of § 523(a)(7), so they are not discharged in bankruptcy.

## IV. CONCLUSION

Civil penalties imposed for knowingly failing to disclose earnings while collecting unemployment benefits are not dischargeable, as they are penalties payable to and for the benefit of the government and are not compensation for a pecuniary loss. The Court therefore REVERSES the bankruptcy court's judgment to the extent that it discharges the civil penalties imposed against Ms. Brown. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: April 17, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court